**Jone Lee ROGERS, Plaintiff-Appellant,**

v.

**The KROGER COMPANY and CNA Insurance Companies, Defendants-Appellee.**

Supreme Court of Tennessee, at Nashville.

June 1, 1992.

---

John Aaron Holt, Jacobs, Holt and Masten, Nashville, for appellant.

Clifford Wilson, Gracey, Ruth, Howard, Tate and Sowell, Nashville, for appellee.

## OPINION

ANDERSON, Justice.

The sole issue for our determination on this workers' compensation appeal is whether or not the employee was guilty of willful misconduct under Tenn.Code Ann. § 50–6–110(a). The Chancellor found that the employee was guilty of willful misconduct which barred recovery for her workplace injury. We affirm the Chancellor's judgment.

## FACTUAL BACKGROUND

The plaintiff-employee, Jone Lee Rogers, age 43, had been employed by the defendant, The Kroger Company, for some 12 years on May 13, 1989, when she injured her left knee while working in the deli at the Kroger store on Charlotte Pike in Nashville, Tennessee.

A summary of the sharply conflicting evidence about what occurred follows: Rogers testified that she was waiting on a customer at the deli counter; that she turned and left the counter to get a cookie for the customer and as she was doing so, she accidentally bumped into her co-employee, Jim Richardson. As a result, she fell injuring her knee. She testified that coffee, bread crumbs, grease and water were on the floor in the area of her fall, which substances made the surface slick and contributed to her fall. She denied that there was any more than one bump between her and Richardson; insisted that it was accidental and not intentional; and denied that they were engaged in horseplay. She concedes she told Jones, Kroger's manager, that she was pushed, but now says she was mistaken; that she was in pain at the time. She also testified that co-employee, Henry Knight, had his back turned during the incident and, therefore, was not in a position to see the incident.

With respect to her injuries, Rogers testified that she was treated by Dr. Christofersen, who placed her knee in a cast for six to eight weeks. She said it is difficult to work in her present condition because of the constant pain. She testified she is lim-

ited in the performance of her duties as a deli clerk because she cannot move as fast as before and stooping and bending cause her problems.

On cross-examination, Rogers said that the horseplay story had been made up by someone; and that although there had been 40 other write-ups for rule violations in the last two or three years by Kroger's management, most of them had been falsified.

James R. Richardson, Rogers' co-employee, testified that while he was bent over, he backed up and struck Rogers with his right hip accidentally. Then, as he turned, he accidentally hit her with his right shoulder, and that caused her to slide and fall down, resulting in her injury. He testified there was liquid on the floor, but he did not recall the nature of the substance. Richardson says the reason Rogers fell was that he bumped into her and not because there was water or grease on the floor. He testified that Henry Knight had his back to the incident and could not see. Richardson denied making any statements in conflict with his trial version to either of the Kroger managers, Jones or Hudson. Richardson also denied he had a later conversation with Henry Knight suggesting it was accidental and inquiring how Knight was going to testify.

Henry Knight, Rogers' co-employee, testified that at the time of the incident, he was facing towards the deli customer counter putting cookies on a tray; that Rogers came from the counter to get some hot cookies off a tray and as she passed Richardson, who was standing still, they bumped together. After that bump, she came back towards Richardson with her shoulder tensed up. He braced himself and her shoulder struck him; the collision made her go backwards and she fell. Knight does not recall whether the floor was wet or dry. Knight said the first bump was accidental and the second collision was intentional on the part of Rogers. Knight testified that both Richardson and Rogers came to him later, told him it was accidental, and asked him what he saw. He told them he was going to tell the truth if he

was asked to testify. He also testified that after the incident, he overheard Rogers tell Kroger's management that she accidentally fell. Knight testified she did not accidentally fall.

Bobby Jones is the store manager at the Charlotte Pike Kroger store. He testified he went to the deli area at the time of the accident and found Richard Hudson, the co-manager of Kroger, there. He asked Rogers what happened, and she said she was too nervous at that time to tell him. He also asked Jim Richardson what happened, and Richardson told him he did not see anything. Jones overheard the ambulance driver ask Rogers what happened, and she said, "I was pushed and I fell." When Jones later talked to Jim Richardson at a disciplinary meeting, Richardson first told him that it was an accident. After further conversation, Richardson said they were "bumping butts" and she fell. Jones testified the condition of the floor was dry, and that Kroger had rules prohibiting horseplay between employees. As a result of his investigation, both Rogers and Richardson were suspended.

Richard Hudson, Kroger co-manager, testified he went to the deli and asked James Richardson what happened. Richardson told him that he and Rogers had been bumping each other in a playful mood. Hudson overheard Rogers' statement to the ambulance driver that she had been pushed and that she fell. Hudson then testified that Richardson was asked to come upstairs to Jones' office, and at that time he changed his story completely and said that Rogers just fell accidentally.

Based on the foregoing evidence, the trial court summarized the evidence in its memorandum opinion as follows:

Plaintiff contends that she was unintentionally bumped by co-worker, James Richardson. This unintentional bump caused her to slip and fall on a slick surface, injuring her knee. Plaintiff testified that there was some type of solution on the floor which caused her to slide and fall. James Richardson testified that he backed up and accidently

[sic] struck plaintiff causing her to fall....

The defendant contends that plaintiff was engaging in intentional horseplay with Mr. Richardson when she was injured.... Another Kroger employee, Henry Knight, testified that plaintiff did accidentally bump into Richardson, but then she backed up and came toward him, intentionally ramming her shoulder into Richardson, causing her to slide and fall.... Bobby Jones, the store manager, testified that immediately after the accident plaintiff stated she was pushed. Subsequently, Richardson stated to Mr. Jones that he and the plaintiff were "bumping butts" before she fell....

The court concluded that Rogers was in violation of Kroger's safety rules by engaging in intentional horseplay, which was the proximate cause of her injury, and constituted willful misconduct under Tenn. Code Ann. § 50–6–110(a); and accordingly, Rogers was not entitled to workers' compensation benefits.

█ The findings of the Chancellor come to this Court with a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn.Code Ann. § 50–6–225(e). "Where the trial judge has seen and heard witnesses, especially where issues of credibility and weight of oral testimony is involved, his findings are accorded considerable deference on appeal." *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315 (Tenn.1987). This is significant in this case, given the fact that there is conflicting evidence in the record.

█ The statute, Tenn.Code Ann. § 50–6–110(a), provides that injuries which occur as a result of the employee's "willful misconduct or intentional self-inflicted injury" are not compensable. Although willful misconduct is not defined in the statute, this Court has stated that three elements are needed to constitute willful misconduct for purposes of the statute: (1) an intention to do the act, (2) purposeful violation of orders, and (3) an element of perverseness. *Ins. Co. of America v. Hogsett*, 486 S.W.2d 730, 733 (Tenn.1972). *See also Wright v. Gunther Nash. Mining Constr. Co.*, 614

S.W.2d 796 (Tenn.1981). Moreover, the workers' compensation statutes provide coverage for *accidental* injuries arising out of and in the course and scope of employment. The mere presence of an employee at the place of his employment will not alone result in the injury being considered as arising out of the employment. *Jordan v. United Methodist Urban Ministries*, 740 S.W.2d 411, 412 (Tenn.1987).

█ After a thorough review of the proof, we are persuaded that the Chancellor decided this case correctly. The record reveals that there were three witnesses to the fall, and their versions of the fall were conflicting. Rogers and her co-employee Richardson's version that it was accidental coincided at the time of the trial; however, their earlier versions conflicted both with each other and with their later trial testimony. The testimony of the third employee was clear and unequivocal that there were two separate bumping incidents, and that the second was an intentional aggressive act on the part of Rogers. There was substantial evidence in the record from which the Chancellor could have determined that both Rogers and her co-employee Richardson were not credible witnesses; and that the version of Knight, the independent witness, was the correct version of what occurred. The evidence does not preponderate against this conclusion.

Our examination of the record agrees with the conclusion of the Chancellor that Rogers' acts amounted to willful misconduct under Tenn.Code Ann. § 50–6–110(a), and that the evidence in the record, considered as a whole, does not preponderate against the Chancellor's judgment.

Accordingly, the Chancellor's judgment is affirmed. Costs of the appeal are assessed against the plaintiff.

REID, C.J., and DROWOTA, O'BRIEN, and DAUGHTREY, JJ., concur.