FILED

August 19, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time 1:29 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MURFREESBORO

| | | |
|---|---|---|
| JOHN MINOR, | ) | Docket No.: 2015-06-0227 |
| Employee, | ) | |
| v. | ) | State File No.: 27720-2015 |
| | ) | |
| NASHVILLE ELECTRIC SERVICE, | ) | Date of Injury: March 6, 2015 |
| Employer. | ) | |
| | ) | |
| | ) | Judge: Dale Tipps |

---

## EXPEDITED HEARING ORDER GRANTING MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

THIS CAUSE came to be heard before the undersigned Workers' Compensation Judge on August 12, 2015, upon the Request for Expedited Hearing filed by John Minor (Mr. Minor), the Employee, on July 16, 2015, pursuant to Tennessee Code Annotated section 50-6-239 (2014) to determine if the Employer, Nashville Electric Service (NES), is obligated to provide medical and/or temporary disability benefits. Considering the positions of the parties, the applicable law, and all of the evidence submitted, the Court concludes that Mr. Minor is entitled to medical and temporary disability benefits.

## ANALYSIS

### Issues

The Dispute Certification Notice (DCN) issued in this claim indicated a number of issues. The Court did not decide issues marked on the DCN unless presented for determination at the Expedited Hearing. The parties presented the following issues for determination at the Expedited Hearing:

*Whether Mr. Minor's injury of March 6, 2015, arose primarily out of and in the course and scope of his employment with NES; and,*

*If so, whether Mr. Minor is entitled to medical and/or temporary disability benefits.*

**Evidence Submitted**

The Court admitted into evidence the exhibits below:

1. Affidavit of John Minor
2. Medical Records from Dr. Robert Weiss
3. Medical Records from Northcreek Chiropractic Clinic
4. Affidavit of John Thomas
5. Employee's Notice of Injury
6. Transcription of Mr. Minor's recorded statement (marked for identification only)
7. Form C20 First Report of Injury.

The Court designated the following as the technical record:

- Petition for Benefit Determination (PBD), April 21, 2015
- Dispute Certification Notice (DCN), July 13, 2015
- Request for Expedited Hearing, July 16, 2015
- NES's Objection To Dispute Certification Notice
- NES's Pre-Hearing Brief
- Mr. Minor's Position Statement.

The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments thereto as allegations unless established by the evidence.

The following witnesses provided in-person testimony:

- Mr. John Minor
- Mr. Chase Porter
- Mr. Bill Braswell
- Mr. John Thomas.

The parties stipulated that Mr. Minor suffered a back injury, including a herniated disc, when he fell on the ice at Chik-Fil-A on March 6, 2015.

**History of Claim**

Mr. Minor is a forty-eight year-old resident of Robertson County, Tennessee. (*See* PBD.) He testified he is a Lineman/Working Foreman for NES, where he has worked since 2003. His current job requires him to "run service" on Fridays, which means he makes repairs or service calls as they are called in by customers and assigned to him by

NES. He went to work on Friday, March 6, 2015, starting at 6:00 a.m. with a morning meeting. Mr. Minor and his partner had no assignments by the time they finished the meeting and prepared their truck, so they decided to take their morning break and drove to Chik-Fil-A. They sat in their truck for a time, filling out paperwork and checking the computer for assignments. They had not received any repair or service calls before they exited the truck to go into the restaurant. Mr. Minor slipped on the ice and fell while walking across the parking lot. He testified that the accident occurred around 7:10 or 7:15 a.m.

Mr. Minor testified that he reported his injury to the company nurse on the day of the accident, and then informed his supervisor, Bill Braswell, on the same day. He continued working that day, but his symptoms eventually worsened to the point that he sought treatment.

On cross-examination, Mr. Minor admitted that he was aware of and understood NES's rule that prohibits employees from taking their break within the first hour of their shift.[1] He confirmed that he selected Chik-Fil-A as the place to take his break.

John Thomas submitted an affidavit and testified at trial. He is a Field Superintendent-Overhead Distribution for NES and is one of Mr. Minor's supervisors. (Ex. 4 at 1.) NES allows its linemen employees two fifteen-minute breaks during their shift. However, it prohibits linemen from taking a break or lunch period within the first hour of their shift. *Id.* Mr. Thomas testified that, other than this restriction, linemen may select their break time and the location of their breaks. He also testified that the truck Mr. Minor drove on March 6, 2015, was equipped with a GPS tracking system. He indicated that records from the tracking system showed that Mr. Minor arrived at Chik-Fil-A at 6:57 a.m. and left at 7:30 a.m. (Ex. 4 at 2.)

Mr. Minor submitted records showing he received treatment from Northside Chiropractic Clinic from March 18, 2015, through July 6, 2015. (Ex. 3.) On April 5, 2015, he told Dr. Wade Scott that he fell at work one month earlier. *Id.* at 5.

Mr. Minor saw Dr. Robert Weiss on April 9, 2015, for left hip, buttock, and back pain that had become intolerable over the past two weeks. Dr. Weiss assigned restrictions of no repetitive bending or stooping, no lifting more than ten pounds, and changing position frequently. (Ex. 2 at 6.) After ordering an MRI, Dr. Weiss noted a large left lateralizing L-5 disc herniation. *Id.* at 6. He stated that the disc herniation "undoubtedly occurred when he slipped and fell on the ice." *Id.* at 1. On May 4, 2015, he revised Mr. Minor's lifting restrictions to no more than thirty pounds. *Id.* at 10. The most recent record from Dr. Weiss, dated July 6, 2015, states that Mr. Minor is still out of

---

[1] NES presented significant amount of testimony to establish the existence of this policy and Mr. Minor's awareness of it. As he admitted both, it is not necessary to summarize that evidence in detail.

work and symptomatic with radicular leg pain.

Except for four days, Mr. Minor has not worked because of his injury since March 30, 2015. He took sick days until he began receiving short-term disability payments on June 3, 2015. He claimed he has incurred medical bills from Northcreek Chiropractic Clinic for $2,452.01. (Ex. 1 at 3.) He attempted to return to work when Dr. Weiss raised his lifting restrictions to thirty pounds, but NES did not accommodate those restrictions. *Id.* at 4.

Mr. Minor filed a PBD on April 21, 2015, seeking medical and/or temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediation Specialist filed the DCN on July 13, 2015.

## Mr. Minor's Contentions

Mr. Minor contends he sustained a low-back injury in the course and scope of his employment with NES. He argues that the street risk doctrine governs this case because his job required him to work all over town, not just on NES's premises. He requests that the Court order NES to provide medical treatment, pay his outstanding medical bills, and reimburse him for medical expenses he has already paid. He also seeks an order for temporary disability benefits for the period of time NES failed to provide light duty within his medical restrictions.

## NES's Contentions

NES does not dispute that Mr. Minor suffered a low-back injury when he fell on March 6, 2015. It contends that Mr. Minor failed to carry his burden of proving that his injury arose primarily out of and in the course and scope of his employment. NES argues that Mr. Minor's accident did not occur during the course of his employment because it happened during a deviation from that employment.

NES also contends that the recent addition to the statute, the requirement that an injury must arise "primarily" out of and in the course and scope of employment, forecloses any finding that Mr. Minor's injury is compensable. It argues that, at the time of the accident, Mr. Minor was not engaged in any business for the benefit of NES, was not assigned to perform any job duties at Chik-Fil-A, and was not assigned to any particular area or specific restaurant in which to eat or take his breaks. It relies on *Vandall v. Aurora Healthcare, LLC*, 401 S.W.3d 28, 29 (Tenn. 2013), which held the mere presence of an employee at his place of employment at the time of an injury does not mean that the injury is deemed to have arisen out of the employment. Therefore, Mr. Minor's employment with NES did not contribute "more than fifty percent in causing the injury," as required by Tenn. Code Ann. § 50-6-102(13)(B) (2014).

4

**Findings of Fact and Conclusions of Law**

*Standard Applied*

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

*Factual Findings*

Mr. Minor suffered a low-back injury, including a herniated disc, when he slipped and fell in the Chik-Fil-A parking lot on March 6, 2015. NES denied the claim on April 16, 2015. Mr. Minor received treatment from Dr. Weiss, who assigned temporary restrictions on April 9, 2015.

*Application of Law to Facts*

In order for an injury to be compensable, it must be accidental. Under the Tennessee Workers' Compensation Law, an injury is accidental "only if the injury is caused by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment, and is identifiable by time and place of occurrence." Tenn. Code Ann. § 50-6-102(13)(A) (2014). "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]" Tenn. Code Ann. § 50-6-102(13)(B) (2014).

The statutory requirements that an injury arise out of and in the course of the employment are not synonymous "although both elements exist to ensure a work connection to the injury for which the employee seeks benefits." *Blankenship v. Am. Ordnance Sys.*, 164 S.W.3d 350, 354 (Tenn. 2005). An injury occurs in the course of employment if it takes place while the employee was performing a duty he or she was employed to perform. *Fink v. Caudle*, 856 S.W.2d 952, 958 (Tenn. Workers' Comp. Panel 1993). Thus, the course of employment requirement focuses on the time, place, and circumstances of the injury. *Saylor v. Lakeway Trucking, Inc.*, 181 S.W.3d 314, 318 (Tenn. 2005). By contrast, arising out of employment refers to causation. *Reeser v. Yellow Freight Sys., Inc.*, 938 S.W.2d 690, 692 (Tenn. 1997). An injury arises out of

5

employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury. *Fritts v. Safety Nat'l Cas. Corp.*, 163 S.W.3d 673, 678 (Tenn. 2005).[2] Put another way, an injury arises out of employment when it "has a rational, causal connection to the work." *Braden v. Sears, Roebuck & Co.,* 833 S.W.2d 496, 498 (Tenn. 1992).

<u>In the Course of Employment</u>

"Acts necessary to the life, comfort and convenience of an employee while at work are incidental to the employment and contribute to the furtherance of service; and injuries that occur in the performance thereof are deemed to have arisen out of the employment." *McCormick v. Aabakus, Inc.*, 101 S.W.3d 60, 63 (Tenn. Workers' Comp. Panel 2000). Tennessee courts have long held that injuries suffered on the employer's premises during lunch breaks arise out of and in the course of employment. *Id.* Mr. Minor, of course, was not on NES's premises when he injured his back. The question, therefore, is whether an off-premises accident by a worker arises out of that worker's employment.

The Court agrees with Mr. Minor that this case is governed by the "street risk doctrine" adopted in *Hudson v. Thurston Motor Lines, Inc.*, 583 S.W.2d 597 (Tenn. 1979). In *Hudson*, the employee was a "city driver." His duties were to pick up and deliver freight. After he made a delivery, he went to a nearby restaurant for lunch while waiting for his truck to be reloaded. There, he was attacked by unknown assailants and sustained severe injuries. The trial court found that his injuries did not arise from his employment, and denied benefits. The Supreme Court noted that, although the employee "could eat when and where [he] might select, it was expected that [he] would take into consideration the convenience of the employer and its customers, as well as [his] own, in selecting the time and place for lunch." *Id.* at 598. Further, the Court found that the employee's selection of the particular restaurant "was for the mutual convenience and economy of the employer, its customer, and perhaps himself." *Id.* at 599. The Court then explicitly adopted the street risk rule, stating that "the risks of the street are the risks of the employment, if the employment requires the employee's use of the street." *Id.* at 602.

In *Hall v. Mason Dixon Lines, Inc.*, 743 S.W.2d 148, 151 (Tenn. 1987), the Court

---

[2] It is noted that the *Fritts* decision included a reference to the "equitable construction" provision of an earlier version of the statute. However, the Supreme Court did not base its explanation of the "arising out of" requirement on the doctrine of equitable construction. "Reliance on precedent from the Tennessee Supreme Court is appropriate unless it is evident that the Supreme Court's decision or rationale relied on a remedial interpretation of pre-July 1, 2014 statutes, that it relied on specific statutory language no longer contained in the Workers' Compensation Law, and/or that it relied on an analysis that has since been addressed by the general assembly through statutory amendments." *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

elaborated on the breadth of the street risk doctrine: "Generally, street risks include simple falls, assaults by highway robbers and automobile accidents."

Mr. Minor's job required him to travel between the NES facility and various locations around the city. The testimony established that linemen could select their break time and the location of their breaks. Thus, as in *Hudson*, Mr. Minor's selection of Chik-Fil-A for his morning break on March 6, 2015, was for the mutual convenience of NES. As one of the "risks of the street," the ice on which Mr. Minor slipped was a risk of his employment by virtue of the travel requirements of his job.

NES contends, however, that Mr. Minor was outside the scope of his employment at the time of the injury because he had deviated from his work duties. An unauthorized deviation may preclude recovery of compensation for an injury caused by an added peril to which the employee is exposed during the period of the deviation. *Carter v. Utica Mut. Ins. Co.*, 2003 Tenn. LEXIS 750, at *10 (Tenn. Aug. 27, 2003). NES alleges that Mr. Minor's deviation was taking his break during the first hour of his shift.

NES's argument is not persuasive. First, there is no proof that the accident actually occurred during the first hour of Mr. Minor's shift. NES presented the affidavit and testimony of Mr. Thomas, who said GPS records showed that Mr. Minor arrived at Chik-Fil-A at 6:57 a.m., three minutes before the end of the first hour of his shift. Unless Mr. Minor left his truck within those three minutes, he did not violate the policy. Mr. Minor testified that he and his partner sat in the truck for a while, filling out paperwork and checking the computer for assignments. He stated that the accident occurred around 7:10 or 7:15 a.m. This unrebutted testimony establishes that Mr. Minor's fall was not the result of a deviation from his work duties.

Even if Mr. Minor had exited his truck when he arrived at the restaurant, it is not at all clear that the alleged three-minute violation of NES's break rule would constitute a material deviation from Mr. Minor's work duties. The undisputed proof is that NES authorized Mr. Minor to take his break anywhere he wished, and that he had no job assignments at the time of the accident. Whether the accident occurred just before 7:00 or a few minutes later than 7:00, there is no evidence this would have resulted in "an added peril to which the employee is thereby exposed during the period of the deviation," as required by *Carter*.

### Arising out of Employment

As noted above, the Workers' Compensation Law now provides that an injury arises primarily out of employment only if a preponderance of the evidence shows that the employment contributed more than fifty percent in causing the injury. NES contends that, at the time of the accident, Mr. Minor was not engaged in any business for the benefit of NES because he had no job duties at Chik-Fil-A and was not required to take

his break there. Therefore, NES argues his employment with NES did not contribute "more than fifty percent in causing the injury," as required by Tennessee Code Annotated section 50-6-102(13)(B) (2014).

The "primarily" requirement is new to Tennessee Workers' Compensation Law and, consequently, the appellate courts have not substantively addressed it. However, it is reasonable to continue to apply the test set out in *Fritts*. That is, is there a causal connection between Mr. Minor's injury and the conditions under which he was required to work?

NES required Mr. Minor to drive around the city in order to make the repairs or service calls assigned by NES. Except for the morning meeting, Mr. Minor was required to travel throughout the day and was not required to return to NES's premises for his breaks and meals. There is no indication he would have been at Chik-Fil-A or suffered any injury had he not been on the job. Further, NES has not identified any other cause of Mr. Minor's injury, much less any cause exceeding fifty percent. The Court finds there is a rational connection between Mr. Minor's injury and the conditions of his work, especially the requirements of travel that led him to the restaurant. The Court further finds that Mr. Minor's work was the primary cause of his injury.[3]

## Medical Benefits

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" Tenn. Code Ann. § 50-6-204(a)(1)(A) (2014).

According to the Tennessee Workers' Compensation Appeals Board:

> Under the same statute, the injured employee has a corresponding duty to accept the medical benefits provided by the employer, but only if the employer provides a list of three or more physicians or surgeons from which the employee has the privilege of selecting the operating surgeon or attending physician. . . . [A]n employer who elects to deny a claim runs the risk that it will be held responsible for medical benefits obtained from a medical provider of the employee's choice and/or that it may be subject to penalties for failure to provide a panel of physicians and/or benefits in a timely manner.

---

[3] NES's reliance on *Vandall v. Aurora Healthcare, LLC*, 401 S.W.3d 28 (Tenn. 2013), is misplaced. While the Court held that the mere presence of an employee at her place of employment at the time of an injury does not mean that the injury is deemed to have arisen out of the employment, the issue in *Vandall* was whether an employment hazard existed or whether the employee's fall was the result of an idiopathic condition. As it is undisputed that Mr. Minor slipped on ice in the Chik-Fil-A parking lot, the Court finds that an employment hazard caused his injury.

8

*McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *13 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015).

Although Mr. Minor gave notice of his injury to NES, there is no evidence he requested medical treatment or notified NES of his desire to make a workers' compensation claim until April 9, 2015. (Ex. 1 at 3.) NES apparently then provided treatment with Dr. Weiss, although the parties presented no evidence as to whether NES provided a panel of physicians. It subsequently denied the claim on April 16, 2015.

The Court finds that NES is not responsible for medical expenses incurred by Mr. Minor prior to his request for workers' compensation benefits. Further, NES is not responsible for Mr. Minor's chiropractic expenses during the period that NES provided authorized treatment with Dr. Weiss, as there is no indication that Dr. Weiss ordered chiropractic treatment. The Court finds, however, that NES is responsible for all of Mr. Minor's related medical expenses (including chiropractic) incurred after April 16, 2015, the date it denied the claim.[4]

NES must also provide ongoing medical treatment made reasonably necessary by the accident as required by Tennessee Code Annotated section 50-6-204(a)(1)(A) (2014). Because there is no evidence as to whether Mr. Minor selected Dr. Weiss from a panel, the Court finds that Mr. Minor has the option of continuing to treat with Dr. Weiss as the authorized treating physician or requesting a new panel of spine specialists.

Temporary Disability Benefits

An employee must establish every element of his claim for workers' compensation benefits. *See Oster v. Yates,* 845 S.W.2d 215, 217 (Tenn. 1992). To establish a prima facie case for temporary total disability benefits, an employee must show that: (1) he or she was totally disabled and unable to work as a result of a compensable injury; (2) that a causal connection exists between the injury and the employee's inability to work; and (3) the duration of the period of the employee's disability. *Gray v. Cullom Mach., Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004).

Mr. Minor has not shown that he is totally disabled and unable to work because of his work accident. Dr. Weiss assigned temporary restrictions, but did not take Mr. Minor completely off work. Consequently, Mr. Minor is not entitled to temporary total disability benefits.

Temporary partial disability arises when the temporary disability is not total. Tenn. Code Ann. § 50-6-207(2) (2012) provides that "[i]n all cases of temporary partial

---

[4] The parties submitted no evidence establishing which expenses are reasonable and necessary, so the Court is unable at this time to specify which of the submitted bills NES must pay. The parties are encouraged to resolve this issue by agreement.

disability, the compensation shall be sixty-six and two-thirds percent (66 2/3 %) of the difference between the average weekly wage of the worker at the time of the injury and the wage the worker is able to earn in the worker's partially disabled condition." When an injured worker is willing to return to work within his restrictions, but the employer is unwilling or unable to return the injured worker to work, the injured worker may be entitled to recover temporary partial disability benefits equal to the amount of temporary total disability benefits. *See Williams v. Saturn Corp.*, 2005 Tenn. LEXIS 1032 (Tenn. Nov. 15, 2005).

Mr. Minor requested workers' compensation benefits on April 9, 2015. Dr. Weiss assigned light-duty restrictions on the same date, which have continued to the present. NES accommodated Mr. Minor's restrictions and he worked from April 10, 2015, through April 15, 2015, at which time NES denied his claim. (Ex. 1 at 3.) NES failed to return him to work following the denial. *Id.* He is thus entitled to continuing temporary partial disability benefits equal to the amount of temporary total disability benefits beginning on April 16, 2015.

NES failed to file a wage statement with the Bureau of Workers' Compensation or the Court, and Mr. Minor did not present any proof of his average weekly wage. However, the C20 First Report of Injury filed by NES on April 7, 2015, indicates that Mr. Minor's bi-weekly wage at the time of his accident was $3,256.00. This reflects an average weekly wage of $1,628.00, which yields the maximum compensation rate of $932.80.

In this case, there is no dispute that Mr. Minor injured his back in a fall at Chik-Fil-A on March 6, 2015. Mr. Minor has presented sufficient evidence for the Court to conclude that, at a hearing on the merits, he would likely establish the injury arose primarily out of and in the course and scope of his employment.

**IT IS, THEREFORE, ORDERED** as follows:

1. Medical care for Mr. Minor's injuries shall be paid and NES shall provide Mr. Minor with medical treatment for these injuries as required by Tennessee Code Annotated section 50-6-204 (2014), to be initiated by NES providing Mr. Minor with his choice continuing treatment with Dr. Weiss or with a panel of spine specialists as required by that statute. NES shall also pay all of Mr. Minor's reasonable and necessary related medical expenses (including chiropractic) incurred after April 16, 2015. Mr. Minor or the medical providers shall furnish NES medical bills for treatment provided in compliance with this order.

2. The amount of temporary disability benefit is $932.80 per week based on Mr. Minor's average weekly wage of $1,628.00.

10

3. Payment of past due benefits in the amount of $17,723.20 shall be made for the period from April 16, 2015, to August 26, 2015.

4. NES or its workers' compensation carrier shall continue to pay to Mr. Minor temporary disability benefits in regular intervals until he is no longer eligible for those benefits by reaching maximum medical improvement, by returning to work at a wage equal to or greater than the pre-injury wage, or by release without restrictions by the authorized treating physician. NES's representative shall immediately notify the Bureau, Mr. Minor, and Mr. Minor's counsel, if any, of the intent to terminate temporary disability benefits by filing Form C-26, citing the basis for the termination.

5. This matter is set for an Initial (Scheduling) Hearing on October 13, 2015, at 9:00 a.m.

6. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

7. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 19th day of August, 2015.**

_____

**Dale Tipps, Judge**
**Court of Workers' Compensation Claims**

11

Initial (Scheduling) Hearing:

An Inietial (Scheduling) Hearing has been set with **Judge Dale Tipps, Court of Workers' Compensation Claims. You must call 615-741-2112 or toll free at 855-874-0473 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate.</u> Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appealing party shall file such position statement with the Court Clerk within three business days of the filing of the Expedited Hearing Notice of Appeal, specifying the issues presented for review and including any argument in support thereof. If the appellee elects to file a response in opposition to the interlocutory appeal, appellee shall do so within three business days of the filing of the appellant's position statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order Granting Medical and Temporary Disability Benefits was sent to the following recipients by the following methods of service on this the 19th day of August, 2015.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| John Minor | | | X | K_minor@bellsouth.net |
| Camille Steward | | | X | csteward@nespower.com |

_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

13