**FILED**

**August 2, 2017**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 9:07 AM**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| Terry Kidd, | ) | Docket No. 2017-06-0350 |
| Employee, | ) | |
| v. | ) | |
| LSO Holding Corp., | ) | State File No. 3304-2017 |
| Employer, | ) | |
| And | ) | |
| Travelers Casualty and Surety Co., | ) | Judge Kenneth M. Switzer |
| Carrier. | ) | |

---

### EXPEDITED HEARING ORDER FINDING COMPENSABILITY

---

Terry Kidd filed a Request for Expedited Hearing, which this Court heard on July 27, 2017. The parties requested that the Court decide only the issue of compensability. LSO Holding Corporation denied compensability on grounds that Mr. Kidd's injury resulted from prohibited "horseplay" that constituted willful misconduct. For the reasons set forth below, the Court holds LSO failed to prove that Mr. Kidd's actions constituted willful misconduct. Rather, Mr. Kidd's injury resulted from an assault arising out of and in the course of his employment at LSO. Therefore, Mr. Kidd is likely to prevail at a hearing on the merits in proving a compensable injury.

### History of Claim

Mr. Kidd worked at LSO, a shipping service, as a delivery associate. On January 9, 2017, Mr. Kidd and a coworker, William Fisher, assisted each other outside the building to load their respective vans with packages for the day's deliveries. Afterward, when Mr. Kidd attempted to pass through a doorway, Mr. Fisher entered the building and bear-hugged Mr. Kidd, lifted him up, held him for a few seconds and then forcefully threw him to the floor. Video surveillance captured the event. Mr. Kidd suffered immediate injury, fracturing his proximal left tibia. He received emergency care and underwent surgery.

LSO admitted the event occurred and promptly investigated. Both LSO's internal

1

investigation report and the First Report of Injury purported a slip and fall as the mechanism of injury. However, the next day, Mr. Kidd retracted the slip-and-fall account in an email to his supervisor, Zakk Armstrong. He wrote that Mr. Fisher "pick[ed] me up and drop me on the floor that's how I got my injury[.]" At the hearing, Mr. Kidd admitted fabricating the slip-and-fall story because he did not want Mr. Fisher fired.

Mr. Kidd and other witnesses related varying versions of the events preceding the injury. Mr. Kidd's affidavit stated, "I did nothing to instigate the actions" of Mr. Fisher. LSO offered testimony and/or written statements from five different witnesses. LSO's fact witnesses included Mr. Armstrong, his supervisor; Lori Thurman, dispatcher; Mr. Fisher; and Garry Lee, another co-worker. LSO also called Jim Stephens, director of safety and compliance, to explain LSO's policy on horseplay.

Testimony portrayed the atmosphere on the loading dock, both generally and on the morning of the injury. Mr. Kidd described it as a "laidback work environment. We might joke and laugh as we're loading the truck up. . . . As long as you get your job done, they're OK." He described the pre-injury events the morning of the injury as "normal." Mr. Fisher called it a "joking around environment," while Mr. Lee agreed that every morning everyone was "joking around, kind of laughing, cutting up." Mr. Armstrong stated that LSO generally permitted "lively talk" but not throwing or sliding packages. For her part, Ms. Thurman said the LSO work environment is "pretty laidback" and drivers occasionally slide boxes with their feet. On the morning in question, Ms. Thurman observed excessive playfulness and encouraged Mr. Kidd and Mr. Fisher to stop the "horse playing" and get their work done. Ms. Thurman specifically recalled hearing laughter and seeing both men throw boxes. She said they threw the boxes "hard" and one of them threw a box that missed the other's head. Mr. Fisher described a similar event, but he changed his story after Mr. Lee asserted that the package merely slid across the dock.

Mr. Lee recalled Mr. Fisher saying to Mr. Kidd, "I'ma get you," in reference to the package incident. Mr. Kidd, Mr. Fisher and Mr. Lee did not characterize this statement as threatening; rather, Mr. Fisher said it playfully. Ms. Thurman used the phrase "horseplay" repeatedly during her testimony, as did Mr. Fisher and Mr. Lee. Mr. Kidd and Mr. Lee characterized this as fairly standard behavior on the loading docks.

Mr. Fisher's written statement provides that, before the incident, Mr. Kidd and Mr. Lee helped him load a truck, when Mr. Kidd:

> [T]hrew a box at me and Hit [sic] my back then I told terry Ima get you then I met up with Terry at the door then I picked him up acting like I was about to slam him but I put him on his feet then IDK what happened after that he just fell to the ground like his legs gave out on him[.] . . . I didn't

2

intentionally slam him that wasn't on my mind me and terry are good friends[.]

Mr. Lee offered a similar account in a statement, noting that Mr. Kidd and Mr. Fisher "grabbed each other playing as men do you know fake wrestling." Ms. Thurman wrote on a witness statement form that, "Terry was helping with load out of other driver. I noticed they were playing around."

A few days after the incident, LSO denied the claim and terminated both Mr. Kidd and Mr. Fisher.

As part of Mr. Kidd's training, he signed an acknowledgement of LSO's polices, which states, "I UNDERSTAND horseplay is considered a serious safety violation and is strictly prohibited." (Emphasis in original.) Additionally, the handbook lists as a ground for immediate discharge "[c]onduct that endangers the life, safety, or health of others." Along these lines, LSO offered Mr. Stephens' testimony, who emphasized its policy against "horseplay." However, Mr. Stephens provided no instance where LSO disciplined an employee for horseplay at the Nashville location. Likewise, Mr. Fisher, Mr. Lee and Ms. Thurman acknowledged they were unaware of LSO disciplining any employee for horseplay. Ms. Thurman chastised Mr. Kidd and Mr. Fisher, observing at the hearing that, "It looked unsafe to me," but she admitted that after scolding them she "left it at that."

## Findings of Fact and Conclusions of Law

Because this case is in the posture of an expedited hearing, Mr. Kidd must present sufficient evidence from which the Court can determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015). However, LSO bears the burden of proof on the willful misconduct defense. Tenn. Code Ann. § 50-6-110(b) (2016).

LSO does not dispute that the incident occurred but argues the injury is non-compensable "horseplay." Both parties asserted that the Appeals Board has yet to address a case involving horseplay. The Court agrees and consults pre-Reform Act law for guidance.

As early as 1930, Tennessee courts have expressed disfavor toward claims involving "horseplay" or "skylarking" resulting in injury where the employee was an active participant. *Borden Mills, Inc. v. McGaha*, 161 Tenn. 376, 380-1 (Tenn. 1930). Several decades later, the high court found an employee's horseplay – namely, the "goosing" of a fellow employee that caused injury – did not arise out of the employment but instead constituted willful misconduct. *Ins. Co. of Am. v. Hogsett*, 486 S.W.2d 730, 733-4 (Tenn. 1972). More recently, the Supreme Court again characterized horseplay

3

resulting in injury as willful misconduct under Tennessee Code Annotated section 50-6-110(a). *Rogers v. Kroger Co.*, 832 S.W.2d 538, 541 (Tenn. 1992).

In *Mitchell v. Fayetteville Pub. Utils.*, 368 S.W.3d 442, 453 (Tenn. 2012), the high court revised the willful misconduct factors to eliminate "perverseness" in an analysis of the term "willful." Instead, the Court outlined the following four-point analysis: (1) the employee's actual, as opposed to constructive, notice of the rule; (2) the employee's understanding of the danger involved in violating the rule; (3) the employer's bona fide enforcement of the rule; and (4) the employee's lack of a valid excuse for violating the rule.[1]

Applying these factors, the Court finds Mr. Kidd had notice that LSO prohibited horseplay, demonstrated by his signed acknowledgement during training. However, this Court cannot conclude that Mr. Kidd fully understood the danger involved, despite this training, given LSO's tolerance of a "joking around environment" and LSO's apparent disregard of the rule. The Court cannot find that LSO strictly enforced the rule, given the testimony of Ms. Thurman and Mr. Stephens that LSO disciplined no one for horseplay previous to this incident. Considered as a whole, the Court cannot find the evidence supports LSO's defense.

Further, common sense dictates that a horseplay defense does not apply when the person injured did not participate in the horseplay. Here, Mr. Fisher suddenly picked Mr. Kidd up and threw him to the ground. Perhaps the best evidence is the video. It clearly depicts Mr. Kidd about to walk through a doorway, presumably to the loading dock, when Mr. Fisher proceeded to pick him up, carried him for several seconds and then threw him forcefully to the ground. Mr. Fisher essentially perpetrated an assault. Mr. Kidd argued that whatever might have happened beforehand did not justify Mr. Fisher's disproportionately violent response. The Court agrees and finds the more appropriate focus is a workplace assault.[2]

The Tennessee Supreme Court previously outlined categories of workplace assaults, including "assaults with an inherent connection to employment such as disputes over performance, pay, or termination." *Woods v. Harry B. Woods Plumbing Co.*, 967 S.W.2d 768, 771 (Tenn. 1998). Assaults falling into this category are compensable. *Wait v. Travelers Indem. Co. of Ill.*, 240 S.W.3d 220, 227 (Tenn. 2007).

Here, the precipitating "dispute" – albeit one lacking ill will – stemmed from an interaction that occurred while, and was cultivated by, loading delivery vans. Mr. Kidd and Mr. Fisher performed this task in a relaxed work environment. However, that does

---

[1] The Appeals Board applied the *Mitchell* test under the Reform Act in several cases, including *Gonzales v. ABC Prof'l Tree Servs.*, 2014 TN Wrk. Comp. App. Bd. LEXIS 2, at *21 (Nov. 10, 2014).

[2] The amended Dispute Certification Notice lists "assault" as an issue.

4

not detract from the fact that the interaction while loading the delivery vans led to the assault shortly afterward. "An injury arises out of employment when there is a causal connection between the conditions under which the work is required to be performed and the resulting injury." *Johnson v. Wal-Mart Assoc., Inc., et al.,* 2015 TN Wrk. Comp. App. Bd. LEXIS 18, at *12 (July 2, 2015) (citation omitted). The Courts finds a causal connection between the conditions of the work on the morning in question and Mr. Kidd's injury.

In conclusion, as a matter of law, Mr. Kidd presented sufficient evidence to establish he is likely to prevail on compensability at a hearing on the merits.

The Court sets this matter for a Scheduling Hearing on **October 9, 2017, at 8:45 a.m. Central Time.** You must call 615-532-9552 or toll-free at 866-943-0025 to participate in the Hearing. Failure to call in may result in a determination of the issues without your further participation.

**ENTERED this the 2nd day of August, 2017.**

**JUDGE KENNETH M. SWITZER**
**Court of Workers' Compensation Claims**

5

# APPENDIX

Exhibits:
1. Terry Kidd Affidavit
2. Video recording
3. Employment documents
4. Deposition of Garry Lee
5. Garry Lee's written statement
6. Deposition of William Fisher
7. William Fisher's written statement

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Subpoena and Return on Service, Zakk Armstrong
5. Employer and Insurer's Witness and Exhibit List for Expedited Hearing
6. Employer and Insurer's Pre-Hearing Brief in Opposition to Employee's Request for Benefits
7. Employee's Pre-Hearing Statement
8. Employee's legal authority

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this Order was sent to the following recipients by the following methods of service on this the 2nd day of August, 2017.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Michael Fisher, Employee's Counsel | | | x | mfisher@ddzlaw.com |
| Chip Storey, Employer's Counsel | | | x | cstoreyj@travelers.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims
WC.CourtClerk@tn.gov

6