CORDELL *v.* KENTUCKY-TENNESSEE LIGHT & POWER Co.

(*Knoxville,* September Term, 1938.)

Opinion filed November 25, 1938.

Con E. Troutman, of LaFollette, for complainant.

Jennings & O'Neil, of Knoxville, for defendant.

Mr. Justice McKinney delivered the opinion of the Court.

This is a workmen's compensation suit. On August 31, 1937, Joe Cordell, husband of petitioner, while working on one of defendant's poles in Jellico, came in contact with a wire carrying 2,300 volts of electricity severely burning his arm and shoulder. · He stated to one witness that he "had to fall to keep from being burned up." To his physician he stated that he "got tangled up with some juice on an electric pole, electricity." As a result of the fall he received injuries resulting in his death on September 28, 1937.

The deceased had been in the employ of defendant for nearly a year and a half as a lineman; had been engaged in similar work for ten or twelve years; was thoroughly familiar with the dangers attending the work which he was performing; was furnished safety appliances, rubber gloves and rubber sleeves to protect his arms and shoulders when working close to these high tension wires, and rubber hose and blankets with which to insulate these wires as he ascended the pole, all of which appliances were in the truck at the foot of the pole on which he was mounted; he had been instructed and directed time and again to use these appliances in such circumstances;

knew that the rules of the company required it; and shortly before the accident the superintendent of defendant had read to him a letter sent out by the company to the district managers on July 29, 1937, calling attention to two recent cases of linemen being electrocuted, urging the men to follow the safety rules, and concluding as follows:

"In the future, any man caught disregarding safety rules must be laid off or discharged without consideration of his position, ability, length of service, or any other good feature."

The superintendent came up to where deceased was working just before he fell; noticed that he did not have his safety equipment; stated to him that he must cover up the wires above him and had another employee tying the rubber hose on a rope when he heard deceased strike the ground; that his work would have been safe and the accident avoided had he used these safety appliances as required by the company. While the two parties at the foot of the pole were securing the safety appliances for deceased, and were not looking at him, deceased changed his position to the danger zone where he was burned as heretofore stated.

The foregoing salient facts were found by the chancellor in much greater detail, and they are well supported by the evidence.

Counsel for petitioner begins his brief with this statement: "The main question in the case is whether or not the injury and death of deceased was caused by his willful failure or refusal to use a safety appliance under Section Number 6861 of the Code." The chancellor concluded that deceased had willfully failed to use such ap-

pliances, and dismissed the petition. The section just referred to provides as follows:

"No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication, or willful failure or refusal to use a safety appliance or perform a duty required by law. If the employer defends on the ground that the injury arose in any or all of the above stated ways, the burden of proof shall be on the employer to establish such defense."

Counsel for petitioner construed "willful misconduct," as applied in this cause, to mean that deceased deliberately and intentionally placed himself in contact with a live wire. The rule, as applied by this court, does not go that far. In *Nashville C. & St. L. Ry.* v. *Coleman,* 151 Tenn., 443, 269 S. W., 919, the head of a rivet which the employee Coleman cut off a boiler struck him in the eye, resulting in its loss. The employer had furnished Coleman with goggles to use in that character of work but he did not have them on when injured. The trial court denied petitioner a recovery upon the ground that he had wilfully violated a safety rule promulgated by the company for his protection. This court, in affirming the judgment of the trial court, said [page 446]:

"We do not think that the employee can be excused for failure to use a safety appliance at hand, when the nature of his work demands the use of such appliance and he knows it, even though such use of such appliance has not been required by any rule of the employer. The statute contains no such thought. The statute provides that there shall be no recovery if the injury is due to 'willful failure or refusal to use a safety appliance.' If, therefore, an employee willfully fails to use a safety appliance

demanded by the men, the use of which is approved by the employer and the appliance furnished by the employer, and which appliance is customarily used, it seems to us that the employee is in no better plight than had the use of the appliance been required by the employer's rule. . . .

"In the course of his testimony with reference to his use of goggles, Coleman said that he wore them when he thought he was in danger. His examination then proceeded:

" 'Q. You wore them when you thought it required it, and did not when you thought it did not require it? A. Yes; it was very uncomfortable, nevertheless I was as much interested when I thought I was in danger as any man.'

"This statement in substance is repeated by Coleman several times in his proof. The effect of his testimony must be conceded to be that he used goggles when he thought it proper, and did not use them when he thought it was unnecessary. In other words, Coleman acted upon his own judgment customarily about the use of goggles and was not governed by the rule of the railway company. When he substituted his own judgment about the matter for his employer's rule and set aside that rule in favor of his own notions, we think this conduct was willful disobedience."

In *Brown* v. *Birmingham Nurseries*, 173 Tenn., 343, 117 S. W. (2d), 739, an award of compensation was denied by the trial court on the ground that the employee Brown, while riding on a truck owned by his employer, with his legs hanging over the side of same, had his legs caught and crushed between the side of the truck and a bridge. Brown had been warned and instructed by the superintendent and by the driver of the truck that he

must not ride in that manner as it was dangerous. With reference to section 6861 of the Code this court, in affirming the judgment of the trial court, said:

"In repeated opinions this Court has distinguished the application of this section of the Act from mere negligence, however great. *Louisville & N. R. Co.* v. *Nichols,* 168 Tenn., 672, 80 S. W. (2d), 656, 98 A. L. R., 508; *Southern Motor Car Co.* v. *Patterson,* 168 Tenn., 252, 77 S. W. (2d), 446, and cases cited. Wilful misconduct connotes intentional misconduct, purposeful violations of established rules of safety and orders for protection from danger. While the danger in this case of the course of conduct, which resulted so disastrously to petitioner, was obvious and should have of itself warned petitioner for his own preservation, we do not rest the case there. We have here a deliberate, and we think quite apparently, intentional disregard of specific instructions of his superior's orders—not an intention to bring about his injury—that is not required by the statute,—but a wilful purpose to disregard instructions and substitute his own wish and judgment for that of his employers."

██ ██ In the cause on trial it seems to us that the danger was greater than in the two cases just referred to. The company had resorted to every conceivable means to impress upon its employees the necessity of using these safety appliances which it had provided for their protection. We can think of nothing more that the company could have done to safeguard its employees than was done in this cause. Therefore, where the employee, with full knowledge of the danger and a familiarity with the safety rules, disregards same, takes a chance and is injured, his conduct within the meaning of the statute is willful and no recovery can be had.

The decree of the chancellor is affirmed.