KENNETH WEBSTER

*v.*

SEVEN-UP BOTTLING Co. et al.

362 S.W.2d 244.

(*Knoxville,* September Term, 1962.)

Opinion filed November 9, 1962.

W. CONWAY GARLINGTON, Knoxville, for petitioner.

HODGES, DOUGHTY & CARSON, Knoxville, J. H. HODGES, Knoxville, of counsel, for respondents.

Mr. Chief Justice Prewitt delivered the opinion of the Court.

This is a workmen's compensation case which resulted in a dismissal by the trial judge.

The employer and its insurance carrier dispute the claim contending the accident arose out of wilful misconduct outside of his employment, and these plaintiffs seek a declaration of the rights of the parties.

The employee suffered severe burns by gasoline flames on the employer's premises.

The facts are as follows:

On the evening of March 31, 1961, about 6:30 p. m. the petitioner, Webster, was in the employer's garage, where he performed the duties of his employment.

Webster, a married man, with a wife and five children, had sent for his girl friend, whom he had been often accustomed to visiting for about four years. She was already at the garage; the employee's work for the day was over and it was their intention to go to a movie.

The company sales supervisor, accompanied by his wife, was preparing to leave the premises for their home and were in their car when Webster came to the garage door and invited them to come in and have a drink of whiskey, and they accepted.

The employee, the supervisor, and the two women then went to the rear of the garage and entered a small walled-off corner called a supply room where tools and car parts were stored. So far as the record discloses they took a drink of whiskey.

On the very limited floor space of the supply room stood three cylindrical metal receptacles, like buckets or drums; two contained water caught from roof leaks and the third was a five gallon drum containing about three gallons of gasoline. This had been used to wash grime and grease from truck parts undergoing repair and it was black looking.

After entering the room the supervisor's wife took a cigarette from her purse and was preparing to light it when her husband warned her not to do so because of the danger of an explosion or fire if there was any gasoline in any of the containers on the floor; whereupon the wife left the room.

After hearing that warning the employee spoke up saying "that stuff won't burn," at the same time bending down and placing his hand over the bucket of gasoline. As he did so, he was observed by the supervisor to be holding what the latter described as an open flame in his hands, which was either a lighted match or a cigarette lighter burning.

The supervisor's wife also heard the employee make the remark, but she did not see the flame, as her husband had. While this was going on the employee's girl friend neither heard the remark nor saw the flame because at the time she was reaching for a bottled drink on one of the trucks standing close by inside the garage.

Webster admitted hearing the supervisor warn his wife but denied that he used a flame. At any rate, it seems that the employee did have a flame in his hand, which he held over the container and the gasoline ignited.

The employee grabbed a garment hanging on the wall and threw it over the roaring fire, which blazed up around and from under that covering, setting the employee and his clothing on fire. After some rolling on the ground and some help from the supervisor, the fire enveloping the employee was extinguished, but he sustained very severe injuries which required a long and expensive hospitalization with a permanent partial disability estimated at from ten to thirty-five percent.

If the accident arose out of the employment there must be a causal connection between the work required to be done and the resulting injury. In the present case there was no causal connection between the employee's injury and the work required to be done. Nothing in the work to be done by the employee required him to place an open flame over a container of gasoline just to demonstrate to some companions that the stuff won't burn.

What Webster did was a wilful failure to follow a course of safety required by common sense and common knowledge in the handling of the dangerous agency of gasoline.

The matter of deviation from one's regular work was considered in *Lumbermen's Mutual Cas. Co. et al. v. Dedmon*, 196 Tenn. 94, 264 S.W.2d 567, where the employee was required to travel, parked his car in front of a cafe and crossed the street to a filling station and sports goods store, there engaged an employee of the store in conversation about a new reel he had. He re-

turned to his car, procured the reel, then returned to the sports supply store and exhibited the reel and discussed it and on his return to his automobile he was struck by a motor vehicle on the street and sustained injuries from which he died. We held that the employee made a detour solely personal and the injury was not compensable, since that portion of the trip was not related to the service of the employer.

In *American Casualty Co. v. McDonald*, 166 Tenn. 25, 57 S.W.2d 795, it was held that an emergency repairman for a bicycle shop, while making a detour from the direct route to the job for an accommodation of another person, had deviated from his employment and injuries received during this deviation were not covered under the Workmen's Compensation Law.

In the present case Webster's act had no connection whatever with his employment and his act was wilful and consequently was not covered by the Workmen's Compensation Law. See *Boggan v. Abby Finishing Co.*, 11 A.D.2d 591, 200 N.Y.S.2d 488 (1960) ; *Sheboygan Airways, Inc. v. Industrial Commission*, 209 Wis. 352, 245 N.W. 178; *Browning v. Birmington Nurseries*, 173 Tenn. 343, 117 S.W.2d 739 ; *Cordell v. Kentucky-Tennessee Light & Power Co.*, 173 Tenn. 596, 121 S.W.2d 970.

It results that we find no error in the judgment of the lower court and it is affirmed.

BURNETT, WHITE, and DYER, JUSTICES, and TOMLINSON, SPECIAL JUSTICE, concur.