**Wade NANCE**

v.

**STATE INDUSTRIES, INC.**

and

**ITT Hartford Insurance Co.**

Supreme Court of Tennessee,
Special Workers' Compensation
Appeals Panel,
at Nashville.

Dec. 27, 2000.

---

Donald D. Zucarello, Nashville, for appellant, Wade Nance.

Gina L. Zylstra, Nashville, for appellees, State Industries and ITT Hartford Insurance Company.

## MEMORANDUM OPINION

DROWOTA, J., delivered the opinion of the court, in which TURNBULL, Sp.J., and CLEMENT, Sp.J., joined.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel in accordance with Tenn.Code Ann. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. The employee contends that the trial court erred in finding that the employee's conduct amounted to a willful failure or refusal to use a safety appliance pursuant to Tenn.Code Ann. § 50–6–110(a). To clarify this area of workers' compensation law, the panel adopts a new standard which requires the employer to prove four elements in order to make out the affirmative defense of willful failure or refusal to use a safety appliance. The Panel vacates the trial court's judgment and remands the case for a new trial in which the new standard will be applied.

The issue in this workers' compensation appeal is whether the employee's willful failure or refusal to use a safety appliance required by the employer bars an award of workers' compensation benefits pursuant to Tenn.Code Annotated § 50–6–110(a)(1999).

Tenn.Code Ann. § 50–6–110(a), provides:

No compensation shall be allowed for an injury or death due to the employee's willful misconduct or intentional self-inflicted injury, or due to intoxication or illegal drugs, or willful failure or refusal to use a safety appliance or perform a duty required by law.

In addition, Tenn.Code Ann. § 50–6–110(b) provides that "[i]f the employer defends on the ground that the injury arose in any or all of the above stated ways the burden of proof shall be on the employer to establish such defense." Consequently, the defenses listed in § 50–6–110(a) are affirmative defenses. *See* Rule 8.03, Tenn.R.Civ.P.[1]

■ Our research discloses that although there are numerous Tennessee cases pertaining to the more general defense of "willful misconduct,"[2] there are relatively few Tennessee cases considering the issue of an employee's alleged willful failure or refusal to use a safety appliance.[3] *Cordell v. Kentucky-Tennessee Light & Power Co.*, 173 Tenn. 596, 121 S.W.2d 970 (1938); *Knoxville Power & Light Co. v. Barnes*, 156 Tenn. 184, 299 S.W. 772 (1927); *overruled in part by, Standard Glass Co. v. Wallace*, 189 Tenn. 213, 218, 225 S.W.2d 35,37 (Tenn.1949); *Nashville, C. & St. L. Ry. v. Coleman*, 151 Tenn. 443, 269 S.W. 919 (1925); *Ezell v. Tipton*, 150 Tenn. 300, 264 S.W. 355 (1924); and *Nashville, C. & St. L. Ry. v. Wright*, 147 Tenn. 619, 250 S.W. 903 (1923). The general rule from these cases was stated in *Nashville, C. & St. L. Ry. v. Wright*:

according to the great weight of authority, "willful failure" to observe a safety rule or use a safety appliance is not a mere voluntary failure. Otherwise contributory negligence would

1. The employer in the pending case raised the safety-appliance affirmative defense in its answer to the complaint.

2. *See generally Wright v. Gunther Nash Min. Const. Co.*, 614 S.W.2d 796 (Tenn.1981).

3. There are additional cases on the related question of failure to comply with an employer's order or safety rule (not involving a safety appliance). *See e.g. Bryan v. Paramount Packaging Corp.*, 677 S.W.2d 453, 455 (Tenn. 1984); *Wright v. Gunther Nash Min. Const. Co.*, 614 S.W.2d at 798; *Kingsport Foundry & Mach. Works v. Sheffey*, 156 Tenn. 150, 153–54, 299 S.W. 787, 788 (1927).

defeat a recovery under a compensation statute. Willful misconduct means something more than negligence. It carries the idea of deliberation and intentional wrongdoing.

*Id.*, 147 Tenn. at 623, 250 S.W. at 904.

While the preceding statement of law is correct, we conclude that the law applicable to the defense of willful failure or refusal to use a safety appliance should be clarified. Accordingly, we adopt the following standard to be applied in such cases. This standard is intended to further the underlying purpose of Tenn.Code Ann. § 50–6–110(a), which is to promote safety in the workplace.

### I. Elements of Willful Failure or Refusal to Use Safety Appliance

■ In light of Tenn.Code Ann. § 50–6–110(b), we turn to a consideration of the elements the employer must prove in order to carry its burden of proof on the affirmative defense of willful failure or refusal to use a safety appliance. Based upon the Tennessee case law on this issue and on the related issue of "willful misconduct" in general, as well as the discussion of this topic in 2 Lex K. Larson, *Workers' Compensation Law*, §§ 32–35 (1997) ("Larson"), we hold that to establish this defense, the employer must prove that:

1. at the time of the injury the employer had in effect a policy requiring the employee's use of a particular safety appliance;

2. the employer carried out strict, continuous and bona fide enforcement of the policy;

3. the employee had actual knowledge of the policy, including a knowledge of the danger involved in its violation, through training provided by the employer; and

4. the employee willfully and intentionally failed or refused to follow the established policy requiring use of the safety appliance.

■ In applying these standards, the court must determine whether the employer made bona fide efforts to enforce the established policy. (See # 2 above). Specifically, if the employer's efforts were so inconsistent or intermittent as to suggest a lack of conscientiousness about the policy, the affirmative defense will fail. Furthermore, the employer cannot carry its burden of proof if it can be shown that the employer had knowledge of safety violations by its employees and acquiesced in those violations. *Bryan v. Paramount Packaging Corp.*, 677 S.W.2d at 455 (stating that "disobedience of a 'rule' is not willful misconduct where the 'rule' is habitually disregarded with the knowledge and acquiescence of the employer.").

■ Likewise, if the proof only shows that the employee had constructive (as opposed to actual) knowledge of the established policy (see # 3 above), the employer cannot be found to have carried its burden of proof. *Nashville, C. & St. L. Ry. v. Wright*, 147 Tenn. at 622–23, 250 S.W. at 904 (finding that employer's posting of rule on bulletin board requiring use of goggles was insufficient to establish that employee knew of requirement). "One cannot deliberately break a rule unless one in fact knows the rule exists." Larson at § 35.02.

■ In evaluating whether the employee's conduct was willful (see # 4 above), the court must distinguish between those cases in which the employee's conduct was accidental, negligent, inadvertent, thoughtless, an error of judgment, or even reckless, and those cases in which the conduct was willful. *Wheeler v. Glens Falls Ins. Co.*, 513 S.W.2d 179, 183 (Tenn.1974). Moreover, the word "willful" as used in "willful failure or refusal to use a safety appliance" must be construed consistently with its use in the more general defense of "willful misconduct." *See Rogers v. Kroger Co.*, 832 S.W.2d 538, 541 (Tenn.1992) (stating that "three elements are needed to constitute willful misconduct for purposes of the statute: (1) an intention to do the

act, (2) purposeful violation of orders, and (3) an element of perverseness."); *Wright v. Gunther Nash Min. Const. Co.*, 614 S.W.2d at 798 (stating, "[i]n defining the term 'willful' this Court has limited its scope to the most extreme situations, and has for all practical purposes limited its application to willful disobedience to known and understood prohibitions."); and *Coleman v. Coker*, 204 Tenn. 310, 315, 321 S.W.2d 540, 542 (Tenn.1959) (stating that "in the overwhelming majority of cases in which this defense has been made it has failed because of the absence of willfulness as that term is normally and usually defined and understood.").

■ Also in considering whether the employee's action was willful, the Court must determine whether there is a plausible explanation for the employee's failure or refusal to use the safety appliance. *See* Larson at § 35.04. For example, if the proof shows that the employee was not using the safety device because it was inadequate or defective, the employee should not be barred from receiving the benefits to which he or she would otherwise be entitled. *Id.* If there is a plausible explanation for the employee's failure or refusal to use a safety appliance, the employee's conduct cannot be found to have included "an element of perverseness" and consequently cannot be found to have been "willful."

■ And in applying the standard set out above, the court must apply the familiar rule of construction that the workers' compensation statutes are remedial in nature and are to be construed liberally in order to attain the purposes for which they were enacted. As we stated in *Betts v. Tom Wade Gin*, 810 S.W.2d 140, 142–43 (Tenn.1991),

> this Court must interpret those statutes in a manner designed to protect workers and their families from the economic devastation that, in many instances, can follow on-the-job injuries. Furthermore, Tennessee's workers' compensation laws must be construed so as to ensure that injured employees are justly and appropriately reimbursed for debilitating injuries suffered in the course of service to the employer.

With the foregoing principles in mind, we now turn to an application of those principles to the facts of this case.

## II. Application of the Standard to This Employee's Conduct

The employee-appellant, Wade Nance, suffered a fractured right ankle on the evening of June 7, 1998, while performing his duties as a greaser and oiler for the employer-appellee, State Industries, a water heater manufacturer. State Industries employs an estimated seventeen hundred people and has a facility that spans approximately thirty-three acres under one roof. Throughout his employment, which began in 1996, Nance has worked in State Industries' maintenance department and primarily has been responsible for greasing and oiling the industrial machinery.

On the evening he was injured, Nance had positioned himself on a ladder approximately four to five feet off the floor and was attempting to grease a turn-roller machine located in the company's paint shop. Another employee unexpectedly activated the power to the turn-roller, causing Nance to fall from the ladder, injuring his ankle. It is undisputed that Nance failed to use a safety appliance and failed to follow the safety procedures that were adopted by State Industries with respect to greasing and oiling the industrial machinery.

To prevent machines from activating while they are being cleaned and otherwise maintained, the Occupational Health and Safety Administration ("OSHA") has adopted the "lockout/tagout" procedure. 29 C.F.R.1910.147. This procedure prevents a machine from engaging its power source and thereby reduces the number of workplace injuries that would otherwise occur as a result of unexpected power

surges. Pursuant to OSHA regulations, each employer, including State Industries, must provide its employees with a personalized lock and identification tag for use while cleaning or maintaining industrial machinery. When it is properly utilized, the lock serves to disable the power source while the tag identifies which employee is presently working on the machine.

To ensure compliance with the OSHA regulations concerning workplace safety, State Industries hired Health Consultants, an independent organization specializing in consultation and training with respect to OSHA's rules governing employee safety. Beginning in 1995, following the development and adoption of company safety procedures concerning the lockout/tagout device, Health Consultants conducted safety classes for State Industries' employees. The training classes focused primarily on the lockout/tagout procedure. Typically, forty-five minutes of the two-hour training class were dedicated to informing the employees of their general rights and responsibilities under OSHA's safety rules and regulations. The remaining time was allotted specifically for employee training on the safety procedure. Upon completion of the training class, each employee was provided with a personalized lock and tag.

Nance attended the class and received his lock and tag in January of 1997. However, Nance testified that immediately following his training, he never used his lock or tag, not even a single time. Nance said that after the training class, he threw his lock and tag "in the toolbox" and forgot about it.

At trial, two of State Industries' employees, both of whom worked with Nance, testified about the use of the lockout/tagout procedure by State Industries' employees. Although both workers testified that their use of the safety device was infrequent, they both confirmed that State Industries deemed the use of the locks and tags to be a mandated company safety procedure. Both workers testified that their supervisor had specifically instructed

them to use the lock and tag. Also, both men testified that their supervisor had reminded them at least once of the importance of using the safety device following their training session with Health Consultants. However, although both of Nance's co-workers had been told that they would get in trouble should they choose to disregard the employer's safety procedures, both employees stated that because they worked the late shift and because they worked on their own throughout the large factory, they knew it was unlikely their supervisor would discover that the procedures were being disregarded. One of the two workers conceded that if his violations of the safety rule were discovered he could "get in trouble."

There is, however, no indication as to what kind of trouble would be visited upon a violator of the safety rule. The record is silent as to what, if any, discipline policy had been adopted by the employer to ensure enforcement. Indeed, no warning signs had been posted to remind employees of the rule. Neither is there any evidence in the record that any employee had been disciplined for a violation. Apparently, Nance's continuous violation of the safety rule for seventeen months either had not been detected, or had been overlooked by the employer. The record is silent as to any policy or procedure put in place by the employer to encourage compliance or prevent employees from disregarding the rule.

After hearing the evidence, the trial court made a number of findings of fact concerning the use of the safety device. Specifically, the trial court placed a great amount of weight on Health Consultant's training classes and concluded that the employees who attended the training class were able to learn the importance of properly using the lockout/tagout device as well as the dangers involved should the device not be used. In addition, the trial court found that: (1) Nance attended the training class; (2) Nance knew about the lockout/tagout procedure; (3) Nance was pro-

vided with a personalized lock and tag; (4) Nance never used the lock or tag; and (5) Nance's co-workers had used the lock and tag at least occasionally and were aware that it was a mandatory procedure. The Court concluded that Nance had "full knowledge of the danger involved, he had familiarity with the safety rules, disregarded the rules, and he was injured." Based upon these findings, the trial court found that Nance's conduct constituted willful misconduct under Tenn.Code Ann. § 50–6–110(a). The court therefore dismissed the employee's complaint.

Our standard of reviewing the trial court's findings of fact is "de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding, unless the preponderance of evidence is otherwise." Tenn.Code Ann. § 50–6–225(e)(2) (1999). In addition, we note that the trial court is in the best position to evaluate the credibility of witnesses. *Story v. Legion Ins. Co.*, 3 S.W.3d 450, 451 (Tenn.1999).

Applying the principles discussed above to the facts of this case, we find that the evidence would support a finding that at the time of the injury the employer had in effect a policy requiring use of the lockout/tagout device. In addition, the evidence would support a finding that the employee had actual knowledge of the established policy due to the training he received through the employer, as well as knowledge of the danger of not using the device. Likewise, the record would support a finding that the employee willfully and intentionally failed or refused to follow the established policy requiring use of the safety appliance. Immediately after the training class, the employee threw his lock and tag in his toolbox and never used it a single time. Nance has not presented any legitimate, plausible, or reasonable excuse for his consistent violations of State Industries' mandatory company policy. Nowhere has it been suggested that Nance's lock and tag were defective, nor is there any evidence that Nance's conduct

was the result of inadvertence or mere negligence. Nance did not merely forget to use the device on a single occasion; rather, he willfully and intentionally decided to violate a company safety policy.

Thus, the evidence would support a finding that the employer carried its burden of proof on three of the four elements of the standard adopted above. As to the fourth element-the employer carried out strict, continuous and bona fide enforcement of the policy-we find insufficient evidence in the record to support a finding that the employer carried its burden of proof as to this element. Although the testimony of the employee's two co-workers tends to show that the employer took some steps to enforce the established policy, the evidence in the record is insufficient to prove strict, continuous and bona fide enforcement of the established policy.

Because neither party nor the trial court had the benefit of the standard adopted in this opinion, we conclude that the trial court's judgment should be vacated and the case remanded for a new trial in which both parties may present their cases in light of the principles stated in this opinion. The judgment of the Chancery Court is vacated and the case is remanded for a new trial. The costs are taxed to the appellee.