

# TENNESSE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT CHATTANOOGA

| | | |
|---|---|---|
| Wilfredo Resto, | ) | Docket No.: 2017-01-0135 |
|     Employee, | ) | |
| v. | ) | |
| Chattanooga Bakery, Inc., | ) | State File No.: 7907-2017 |
|     Employer, | ) | |
| And | ) | |
| Presidio Insurance, LTD, | ) | Judge Thomas Wyatt |
|     Insurance Carrier. | ) | |
| | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY PARTIAL DISABILITY BENEFITS

This claim came before the Court on May 26, 2017, for an Expedited Hearing requested by Wilfredo Resto. The focal issue is whether Mr. Resto's claim is barred by his alleged willful violation of safety rules and failure to utilize safety equipment. For the reasons set forth below, the Court finds Mr. Resto is entitled the medical and temporary partial disability benefits.

### History of Claim

Mr. Resto is a thirty-nine-year-old Spanish-speaking United States citizen[1] residing in Chattanooga, Hamilton County, Tennessee. On January 26, 2017, he sustained injuries to multiple fingers, including amputations of the tips of two fingers of his dominant right hand, while cleaning a sheeting machine at Chattanooga Bakery, Inc. (the Bakery). While the Bakery did pay for the emergent care of Mr. Resto's injury, it denied his claim on the basis his injuries resulted from his own willful misconduct in cleaning the machine while it was in operation and unguarded.

---

[1] Mr. Resto testified he was not certain where he was born because his parents moved often. During the hearing, he testified he thought he was born in Puerto Rico. However, during a recorded statement, he stated he was born in North Carolina.

1

The Bakery produces Moon Pie pastries. Its human resources manager, Terry Humphreys, Jr., testified the sheeting machine is about half the size of a Greyhound bus. Dough enters the machine on an approximately one-hundred-foot-long conveyor belt and is rolled thin and cut into cookies while in the machine. Mr. Humphreys explained that the process of cleaning the machine occurs on the non-operator, or back side, of the machine, where a removable metal housing encases the moving parts. Mr. Humphreys testified the housing on the back of the machine acts as a safety device for sanitation workers, such as Mr. Resto.

According to Mr. Humphreys, the cleaning process in which Mr. Resto engaged included the use of a cylinder that directs a gas flame to burn off cloth threads that accumulated on the conveyor belt. The sanitation worker must burn threads while the machine is running because sections of the conveyor belt are inaccessible when the machine is off. Mr. Humphreys testified the sanitation worker can burn threads without removing the housing if he does so at the location where the conveyer belt exits the interior of the machine.

Mr. Humphreys stated the cleaning process also involved sanitizing the moving parts of the machine after the removal of excess dough. This process required the sanitation worker to remove the housing to access the parts. Mr. Humphreys testified the sanitation worker should perform this operation after someone turns off the machine following a lock out/tag out procedure.

The Bakery submitted evidence showing that, on February 15, 2015, Mr. Resto received training on the written policies governing the cleaning of the sheeting machine. This training consisted of his reading and signing typed instructions written in Spanish.[2] (Ex. 7 at 1-3.) These written procedures list the first step as "[l]ock and tag out sheeter." However, the procedures address nothing at all about the process of burning threads, nor do they inform the sanitation worker as to when the worker should remove the housing at the back of the machine.

The Bakery's submissions also indicate Mr. Resto received general safety training, including training on lock out/tag out procedures and the use of safety devices, on October 6 and 24, 2016. (Ex. 7 at 10, 14.) This training consisted of Mr. Humphreys reading the English text of the document aloud, after which a Spanish-speaking supervisor interpreted the text in Spanish. (Ex. 7 at 8-14.) Among the two pages of small-print, single-spaced, text allegedly recited to Mr. Resto was the following language:

---

[2] Neither side presented evidence on Mr. Resto's reading proficiency, although Mr. Resto did testify he has a third-grade education.

All moving equipment within your workplace is subject to laws requiring physical guards to protect you from injury from coming into contact with moving parts of machinery, including moving belts, shafts, gears, pulleys, etc. You are not to operate equipment, which is not sufficiently guarded[.]

The Bakery also gave Mr. Resto a sixty-five-page Employee Handbook that contains the following safety rule: "Before starting, operating, or working around machinery, be certain that no hazards exist and that ALL GUARDS ARE IN THEIR PROPER PLACE. Do not, under any circumstance, remove guards while the machine is in operation." The Bakery came forward with no evidence that it recited this rule to Mr. Resto in Spanish or that Mr. Resto actually read it. Mr. Humphreys stated that he had not observed Mr. Resto's work practices to judge his compliance with the described training.

Mr. Resto testified he began working at the Bakery a little less than two years before the date of injury. For the first nineteen months, the bakery assigned him to clean the sheeting machine. He stated he received on-the-job training for a couple of days before he began cleaning the machine himself. Mr. Resto did not mention the training described by Mr. Humphreys when testifying about the training he received.

In October 2016, the bakery assigned Mr. Resto to clean another machine, but because of insufficiencies in his performance it reassigned him to the sheeting machine approximately four weeks before the date of injury. Mr. Resto testified that, before October 2016, he performed all cleaning functions, including burning threads, with the machine turned off. He stated that, upon his reassignment, his supervisor instructed him to burn the threads from the conveyor belt while the machine was running. In a recorded statement he gave a month after his injury, Mr. Resto described the changed instruction in more detail as follows:

> There is this thread that gets stick [sic] in the band of the machine sometimes. So, they got mad at me because they found a piece of thread hanging so they told me from now one [sic] I had to clean the whole roll, clean the bands before brushing[.]

> \* \* \*

> Like I told you before, they told me the belt had to be running to be able to clean the thread. But that is not the proper way to do it because I've worked [on the sheeting machine] for one year and eight months and we've never done that before. They told me that if I wanted to keep my job we would do it that way so I agreed.

(Ex. 4 at 8, 12.)

Mr. Resto testified that he questioned his supervisor, Jesús Lopez, about why he needed to burn threads with the machine running. Mr. Lopez told him to do as instructed or risk losing his job. Mr. Resto testified he complied with these instructions until the date of injury. When asked on cross-examination why he took the housing off to burn threads, Mr. Resto testified the Bakery had trained him to remove the housing to clean the machine. He further stated in response to this line of questioning that he had to take the housing off to clean the machine.

On the date of injury, Mr. Resto was burning threads with the machine running in compliance with the Bakery's instructions. He laid his cylinder to the side and reached to pick up some loose dough near the conveyor belt. When asked during the recorded statement why he tried to remove dough while burning the threads with the machine running, Mr. Resto stated, "I just cleaned some of the dought [sic], but like I told you, I never thought that would happen, since I was just clening [sic] a little bit, but we weren't actually cleaning the machine [at the time I was injured.]" (Ex. 4 at 14.)

When Mr. Resto picked up the dough, the little, ring and middle fingers of his right hand contacted the chain that operates the conveyor belt. He attempted to extricate his fingers with his left hand, but the moving chain fractured his left index finger. He screamed for help, and a co-worker stopped the machine. A mechanic had to cut the chain to disentangle Mr. Resto's fingers from the machine.

Mr. Resto received emergent care for his injuries at Erlanger Medical Center, where he underwent surgery including amputation of the tips of the ring and middle fingers on his right hand and the placement of a pin in his fractured left index finger. The discharge papers Mr. Resto received from Erlanger instructed him: "Do not use hands for anything." (Ex. 12.)

Mr. Resto came under the care of Dr. Philip Sutherland at Clínica Médicos after the Bakery denied his claim. Dr. Sutherland wrote on February 28, 2017, that he noted "stiffness of all of his affected digits with limited flexion of these digits at this time." Dr. Sutherland stated Mr. Resto would require another two months to regain near full range of motion of his fingers. Mr. Resto had surgery to remove the pin from his fractured finger in May 2017. He testified during the Expedited Hearing that he had not worked since the date of injury.

Mr. Resto filed a Petition for Benefit Determination challenging the Bakery's denial of his claim. After mediation failed to resolve the parties' differences, the

mediator issued a Dispute Certification Notice that certified compensability, medical benefits and temporary disability benefits[3] issues to the Court for determination.

## Findings of Fact and Conclusions of Law

### *General Legal Principles*

The Court applied the following legal principles in deciding this claim. Mr. Resto bears the burden of proving all essential elements of his claim. However, where the employer defends a claim on the employee's willful misconduct, the burden of establishing the defense rests upon the employer. *See* Tenn. Code Ann. § 50-6-110(b) (2016). The party bearing the burden of proof on an issue need not prove every element of the issue by a preponderance of the evidence at an Expedited Hearing. Rather, the party who has the burden of proof must come forward with sufficient evidence from which the Court can determine that the party is likely to prevail in establishing the issue or issues at a hearing on the merits. *See McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015).

### *Willful Misconduct*

Tennessee Code Annotated section 50-6-110(a)(1) and (4) (2016) provides, "[n]o compensation shall be allowed for an injury or death due to: (1) [t]he employee's willful misconduct; [or] (4) [t]he employee's willful failure or refusal to use a safety device." The Bakery argued Mr. Resto's claim is barred because he willfully violated its rule prohibiting cleaning the sheeting machine while in operation and, further, because he willfully removed a safety device—the housing from the back of the machine—to clean the machine while it was in operation.

In assessing the Bakery's willful misconduct defenses, the Court considers the Workers' Compensation Appeals Board's decision in *Scarbrough v. Right Way Recycling, LLC*, 2015 TN Wrk. Comp. App. Bd. LEXIS 9, at *12-14 (Apr. 20, 2015), which applied the misconduct test in *Mitchell v. Fayetteville Public Utilities*, 368 S.W.3d 442, 453 (Tenn. 2012), in a new-law claim. In *Scarbrough*, the Appeals Board held that the employer must prove the following factors to bar an employee from benefits based on the willful misconduct defense: (1) the employee's actual, as opposed to constructive, notice of the violated rule, (2) the employee's understanding of the dangers involved in violating the rule, (3) the employer's bona fide enforcement of the rule, and (4) the employee's lack of a valid excuse for violating the rule.

---

[3] The parties stipulated the accuracy of the Wage Statement completed by the Bakery, which established that Mr. Resto's average weekly wage was $781.08 (weekly compensation rate-$520.72).

5

In applying the above factors, the Court notes the majority of the Supreme Court in *Mitchell* approved the following language from its Special Workers' Compensation Panel in *Nance v. State Industries, Inc.,* 33 S.W.3d 222, 226 (Tenn. Workers' Comp. Panel 2000): "[i]n evaluating whether the employee's conduct was willful . . . the court must distinguish between those cases in which the employee's conduct was accidental, negligent, inadvertent, thoughtless, an error of judgment, or even reckless, and those cases in which the conduct was willful." *Mitchell,* 368 S.W.3d at 452.[4] In view of the above authority, the Court holds the Bakery failed to show that, at a hearing on the merits, it will likely prevail in establishing that Mr. Resto's injury was due to his willful violation of a safety rule and/or his willful removal of a safety device.

In making this ruling, the Court accepts Mr. Resto's unrebutted testimony that he was burning threads, and not cleaning the moving parts of the sheeting machine, at the time of his injury.[5] The Court also accepts Mr. Resto's testimony, which Mr. Humphreys' testimony corroborated, that his supervisor instructed him to burn threads with the machine running. The Court hold that the above testimony negates the Bakery's claim that Mr. Resto violated its rule against cleaning the machine while it is running. Accordingly, the Court finds the Bakery failed to establish that Mr. Resto violated a safety rule by burning threads while the machine was in operation.

The Bakery's primary contention is that Mr. Resto committed willful misconduct by removing the housing from the back of the machine while it was running. It argued that Mr. Resto could have burned threads without removing the housing if he had done so at the location where the moving conveyer belt exits the machine. In support of this contention, the Bakery relies on its written policies. The Bakery did not present any witness who testified with actual observation of Mr. Resto's work activities.

The Court notes that the written policies the Bakery submitted address neither the thread-burning process nor when and under what conditions, during the process, the sanitation worker should remove the housing from the back of the machine. (Ex. 7 at 1-6.) However, the Bakery contended Mr. Resto violated its general policy prohibiting the operation of unguarded machinery. In support of this position, the Bakery relied on the language quoted at the top of page 3 of this order, which, according to Mr. Humphreys, a supervisor orally translated to Mr. Resto as Mr. Humphreys read it aloud.

Mr. Resto did not testify about the above-described language when asked about his safety training. Furthermore, Mr. Resto has a third-grade education and, in the fast-

---

[4] The only reservation stated in the *Mitchell* opinion to the standard set forth in *Nance* was the use of the term "perverseness" in *Nance* to describe the type of conduct that would indicate willful misconduct of an employee. The Court in *Mitchell* did not adopt the "perverseness" standard, but approved the language from *Nance* quoted in the body of the Court's order. *Mitchell,* at 453.

[5] While Mr. Resto testified his injury occurred when he reached to remove dough from the machine, he also testified he was burning threads when he did this.

6

paced environment in which he worked, the Court questions whether it is reasonable for the Bakery to expect Mr. Resto to remember a "rule" recited to him verbally along with a mass of other information. The Court also questions whether it is reasonable for the Bakery to expect Mr. Resto to extrapolate from the above-quoted language that he should only burn threads while the housing on the back of the machine was in place. Finally, the written policies submitted by the Bakery do not identify the housing of the machine as a safety guard, and the Bakery came forward with no evidence indicating it communicated this to Mr. Resto.

The Court does not consider the language from the Employee Handbook to constitute a rule that would invoke the willful misconduct defense under section 50-6-101(a)(1). The Bakery came forward with no evidence that Mr. Resto actually read and understood the text in the Handbook, which is written in English. At most, the Bakery established Mr. Resto had constructive notice of the text and, as pointed out in *Scarbrough,* constructive notice of a rule does not invoke the willful misconduct defense.

In view of the above, the Court finds that, at a hearing on the merits, the Bakery will not likely prevail in establishing that Mr. Resto knew the housing at the back of the sheeting machine was a safety guard. Specifically, the Court finds the Bakery did not meet its burden of proving it communicated this concept to Mr. Resto. Furthermore, the Court finds the Bakery will not prevail in establishing Mr. Resto acted with willful misconduct when he reached to remove dough while burning threads on the sheeting machine. The Bakery may prevail in establishing that Mr. Resto's decision to reach for dough while the machine was running constituted an inadvertent or, perhaps, even a negligent act. However, the Bakery did not establish the element of intentionality in Mr. Resto's actions required for a finding of willfulness.

In summary, the Court holds the Bakery did not establish that, at a hearing on the merits, it will prevail in showing that Mr. Resto either willfully violated safety rules or refused to use a safety guard in connection with the incident in which he suffered injury. Therefore, the Court awards Mr. Resto benefits under the Workers' Compensation Law.

*Medical Benefits*

Tennessee Code Annotated section 50-6-204 (2016) requires that an employer provide an injured employee medical treatment of his injury free of cost to the employee. The Bakery did not provide this benefit to Mr. Resto after it denied his claim fourteen days after the date of injury.

In that Mr. Resto suffered from healing amputations to two fingers and had an external pin attached to his left index finger, the Court finds he was justified in seeking care from Clínica Médicos after the Bakery denied his claim. Accordingly, the Court orders that the Bakery and its workers' compensation carrier provide on-going care of Mr. Resto's work injuries by physicians at Clínica Médicos.

*Temporary Disability Benefits*

In *King v. Compass Heating and Air*, 2016 TN Wrk. Comp. App. Bd. LEXIS 89, at *3-4 (Nov. 22, 2016), the Workers' Compensation Appeals Board held,

> An injured worker is eligible for temporary disability benefits if (1) the worker became disabled from working due to a compensable injury, (2) there is a causal connection between the injury and the inability to work, and (3) the worker established the duration of the period of disability. *James v. Landair Transp., Inc.,* No. 2015-02-0024, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Tenn. Workers' Comp. App. Bd. Aug. 26, 2015).

The "After Surgery" instructions Mr. Resto received from Erlanger Medical Center instructed that he not use his hands for anything. (Ex. 12.) When Mr. Resto sought care from Clínica Médicos on February 28, 2017, Dr. Sutherland noted Mr. Resto still had stiffness in all the affected digits and described his injuries as "healing." (Ex. 13 at 1.)

The Court finds that the prohibition that Mr. Resto not use his hands following his release from Erlanger on January 27, 2017, totally disabled him from working. Although Mr. Resto's injuries had not totally healed when Dr. Sutherland examined him on February 28, 2017, the records do not indicate Dr. Sutherland placed restrictions on his activities. Accordingly, the Court awards Mr. Resto temporary total disability benefits from January 27, 2017, until February 28, 2017, a period of four weeks, five days. Based on Mr. Resto's compensation rate of $570.82 per week, the Court awards Mr. Resto $2,689.58 in temporary total disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Chattanooga Bakery and/or its carrier shall authorize Clínica Médicos to provide on-going medical treatment of Mr. Resto's work injury.

2. Chattanooga Bakery and/or its carrier shall pay Mr. Resto $2,689.58 in temporary partial disability benefits covering the period from January 27, 2017, until February 28, 2017.

3. Should counsel for Mr. Resto seek an attorney's fee and/or reimbursement of expenses, he shall petition the Court, supporting his request by affidavit.

4. This matter is set for a Status Hearing at 10:00 a.m. Eastern Time on August 4, 2017. You must call (423) 634-0164 or toll-free at (855) 383-0001 to participate

in the Status Hearing. You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.**

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 6th day of June, 2017.**

**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

9

**APPENDIX**

Exhibits:

1. First Report of Injury (Form C-20);
2. Wage Statement (Form C-41);
3. Affidavit of Wilfredo Resto;
4. Transcript of recorded statement of Wilfredo Resto;
5. Notice of Denial (Form C-23);
6. Narrative investigative report of Chattanooga Bakery;
7. Training documents;
8. Timeline;
9. Personnel records;
10. Safety materials compiled by Chattanooga Bakery;
11. Employee Handbook;
12. Records of Erlanger Medical Center;
13. Records of Clínica Médicos/Drs. Philip Sutherland and Tiffany Meador; and
14. Two photographs of the sheeting machine.

Technical record:

1. Petition for Benefit Determination;
2. Dispute Certification Notice; and
3. Request for Expedited Hearing.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 6th day of June, 2017.

| Name | Certified Mail | Via Email | Email Address |
|------|----------------|-----------|---------------|
| Marc Walwyn, Employee Attorney | | X | marc@walwynlegal.com |
| Peter Rosen, Employer Attorney | | X | prosen@levineorr.com |

_____
PENNY SHRUM, COURT CLERK
wc.courtclerk@tn.gov

10