**FILED**
**Dec 01, 2021**
**03:51 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **BRADLEY TEMPEL,** | ) | **Docket No. 2021-07-0056** |
| **Employee,** | ) | |
| **v.** | ) | |
| **DR ROOFING, LLC,** | ) | **State File No. 800069-2021** |
| **Employer,** | ) | |
| **And** | ) | |
| **AMGUARD,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

---

Mr. Tempel requested medical and temporary disability benefits for injuries from a fall from a roof. DR denied his request on grounds that the fall resulted from his intentional violation of a safety rule. The Court heard the issue at an Expedited Hearing on November 15, 2021 and holds Mr. Tempel would likely prevail in showing his injury arose out of his employment and that he is entitled to a panel of physicians.

### History of Claim

On December 22, 2020, Mr. Tempel was roofing a house with several co-workers. After a break, he returned to the rear of the house with additional shingles to complete an unfinished section on the left side. A ladder leaned against the house to the right of the unfinished section, and above the ladder a safety rope with an attached hook extended nearly to the roof's edge. Mr. Tempel had unhooked that rope from his safety harness when he climbed off the roof.

Because the ladder was to the right of the unfinished section, Mr. Tempel decided to move the ladder and place it under another safety rope so he might go directly to the unfinished section. However, unlike the rope he had been attached to earlier, the hook on a rope hanging from the left side did not reach the edge, and Mr. Tempel had to partially climb onto the roof to reach for it. He pulled on the rope twice to bring the hook down to

1

his harness but, when he did, the rope "got slack." It pulled out of his hand, causing him to fall, landing on both feet. A coworker then transported him to a local hospital, and he later saw other providers. He said he wore a cast for a while and was then placed in a "boot."

Two months earlier, DR provided its employees with a letter that included the following: "Harnesses are required on every roof that is above a 6/12[1] at all times. If the roof is 6/12 or below harnesses are required while working near the edge. Failure to adhere to the harness rules will result in immediate termination." Mr. Tempel admitted he received the letter and that he understood the purpose of the rule was to prevent falls.

But he also claimed that employees did not always follow the rule. For example, on the day in question, he said that two coworkers, including the site manager, were not wearing harnesses. Further, he was not attempting to work without a harness, since the roof at the rear of the house sloped at an 8/12 pitch, which Mr. Tempel said was so steep that no one could walk on it unless attached to a rope.

As to his specific actions, Mr. Tempel admitted he could have climbed the ladder without moving it to the left, though doing so made it easier to reach the unfinished section. He also said that even if he had hooked to the rope on the right, he would have had to unhook from it and attach to the left rope as he moved across the roof. He said he may have had a "lapse of judgment," but he felt it was just as safe to use the left rope. Further, he testified that reaching up for the rope after moving the ladder "wasn't done purposefully;" instead, "it didn't work the way [he] thought it would."

Travis McKay, the site manager, testified that DR employees had been "100% compliant" with the harness rule. As to the day in question, he also retrieved more shingles from where they were stacked at the rear of the house, but he climbed the roof from the front where the incline was not as steep. He said it was "safer" to climb at the front of the house, where the slope allowed him to walk easily without a harness. He said Mr. Tempel might have climbed the front also or used the rope that hung from the right side of the rear of the house and, if he had, there would have been no reason he could not have locked onto the hook.

DR argued Tennessee Code Annotated section 50-6-110(a)(4) barred Mr. Tempel's recovery because no compensation is allowed for an injury due to an employee's willful failure to use a safety device. DR claimed Mr. Tempel willfully violated its harness rule because he did not use the rope hanging above the ladder where it leaned against the house, but instead moved the ladder to where he was required to climb without being harnessed. Further, DR argued Mr. Tempel might have climbed the roof from the front of the house where the pitch was not as steep, like Mr. McKay did.

---

[1] The fraction 6/12 refers to the pitch of a roof. The upper number refers to the increase in height in inches over every foot of distance.

DR cited the controlling authority regarding safety rule violations, *Mitchell v. Fayetteville Pub. Util.*, 368 S.W.3d 442, 453 (Tenn. 2012). There, the employee removed insulated gloves and then came in contact with a live wire, causing severe injuries. The Tennessee Supreme Court held the employee's willful removal of his gloves violated a rule requiring gloves when working near power lines.

The Court also adopted the following four-part analysis for safety rule violations:

1. the employee's actual as opposed to constructive notice of the rule;
2. the employee's understanding of the danger involved in violating the rule;
3. the employer's bona fide enforcement of the rule; and
4. the employee's lack of a valid excuse for violating the rule.

Here, Mr. Tempel admitted he knew about the harness rule and that he understood the danger involved in violating it. However, he disagreed as to DR's enforcement of the rule and, if he did violate it, whether he had a valid excuse for doing so.

The only authority he offered in support was *Hawks v. Christian*, No. M2015-02200-SC-R3-WC, 2016 Tenn. LEXIS 382 (Tenn. Workers' Comp. Panel June 20, 2016), where the *employer* prevailed. The *Hawks* employee fell from a roof after unhooking a safety cable while standing near the edge of a roof. He said the cable had wrapped around his leg, and the trial court found that unhooking the cable to free his leg was a valid excuse for violating a rule requiring cables. The Panel disagreed, instead holding that the "employee's belief that he would be safe while unharnessed because of his experience" was not a valid excuse. *Id.* at *11. The Panel explained: "The purpose of safety rules in general is to avoid employees applying their own individual determinations of what is safe." *Id.* at *12.

DR filed a motion in limine to prevent Mr. Tempel from introducing any evidence because he did not disclose it before the hearing. *See* Tenn. Comp. R. & Regs. 0800-02-21-.15 (August, 2019). Mr. Tempel agreed he did not disclose any evidence but stated his focus was instead on compensability. The Court granted the motion based on Mr. Tempel's concession, and no evidence of his medical treatment, medical bills for it, or proof of his alleged time off work appears in the record.

**Findings of Fact and Conclusions of Law**

Under Tennessee Code Annotated section 50-6-110(b), DR bears the burden of establishing the willful misconduct defense. However, at an Expedited Hearing, Mr. Tempel still must show he would likely prevail at trial. Tenn. Code Ann. § 50-6-239(d)(1); *Iboy v. Kenten Mgmt.*, *LLC*, 2018 TN Wrk. Comp. App. Bd. LEXIS 23, at *14 (May 8, 2018). To prevail, Mr. Tempel must show his injury arose primarily out of his employment and was caused by an incident identifiable by time and place of occurrence. Tenn. Code Ann. § 50-6-102(14)(A). The parties do not dispute that Mr. Tempel fell from the roof and

3

landed on his feet; thus, the Court finds Mr. Tempel would likely prevail in proving a specific incident.

However, the dispositive issue is whether he intentionally violated the safety rule. In that regard, the parties agree DR satisfied the first two *Mitchell* elements. As to the third, DR's bona fide enforcement of the rule, the evidence is contradictory. Mr. McKay testified the rule was "100% enforced;" Mr. Tempel said it was not. However, this disagreement is not controlling.

Instead, the Court looks to the fourth element and considers *Nance v. State Indus.*, 33 S.W.3d 222, 226 (Tenn. 2000), the controlling authority before *Mitchell*. In *Nance,* the Tennessee Supreme Court stated, "[i]n evaluating whether the employee's conduct was willful . . . the court must distinguish between those cases in which the employee's conduct was accidental, negligent, inadvertent, thoughtless, an error of judgment, or even reckless, and those cases in which the conduct was willful." In *Tenn. Clinical Sch., LLC v. Johns*, No. M2018-00985-SC-R3-WC, 2019 Tenn. LEXIS 295, at *19 (Aug. 2, 2019), the Panel stated, "[w]e do not believe the *Mitchell* Court eliminated the requirement that the employee's conduct be more than merely an *error in judgment*, negligent, or even reckless." (Emphasis added).

Here, Mr. Tempel explained he moved the ladder so it would be closer to the unfinished area of the roof and that he attempted to hook to the rope. Though he had to reach for the rope, he said moving the ladder to where he had to reach "wasn't done purposefully" but, if anything, he had a "lapse of judgment." The Court agrees. Mr. Tempel did not make a conscious choice to violate the rule; instead, he may have made a poor decision of how to follow it. In short, if moving the ladder caused Mr. Tempel to have to reach for the hook, then that error of judgment was not a willful violation of the rule. Neither was his failure to climb the front of the roof instead. Again, conduct that might be called thoughtless, negligent, or even reckless does not mean it is willful.

Contrast these facts with *Mitchell,* where the employee knew the safety policy required using protective gloves, but he *elected* to take them off anyway, which "clearly established that his act was willful and not merely negligent or reckless." 368 S.W.3d at 455. Likewise, in *Hawks*, the employee "*chose* to violate the rule [of using a harness] at the very edge of the roof, where the possibility of falling was greatest." *Id.* at *11. (Emphasis added).

For these reasons, the Court holds Mr. Tempel likely would prevail in showing he did not intentionally violate a safety rule.

Further, the Court holds Mr. Tempel is entitled to a panel of physicians for the injuries to his feet. In *Hibbitts v. Kim Royal d/b/a Royal Guttering*, 2021 TN Wrk. Comp. App. Bd. LEXIS 10, at *6 (Mar. 23, 2021), the Appeals Board affirmed an order for a panel

4

of physicians when the employee "provided uncontroverted evidence that he fell and was taken to a hospital." However, in the absence of any other evidence, the Court cannot order DR to pay either medical bills or temporary disability benefits at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. DR shall provide Mr. Tempel medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A) by providing a panel of physicians to evaluate and treat the injuries to his feet.

2. The Court sets a Status Hearing on **Monday, March 7, 2022, at 9:30 a.m. Central time**. **The parties must call 731-422-5263 or toll-free 855-543-5038 to participate in the Hearing.**

3. Unless an interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit by email at WCCompliance.Program@tn.gov.

**ENTERED December 1, 2021**.


_____*Allen Phillips*_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**


**APPENDIX**

Exhibits:
1. Letter from DR regarding use of safety harnesses
2. Images of safety harness equipment
3. Photograph of house where injury occurred (rear)
4. Photograph of house where injury occurred (front)
5. Sworn Statement of Kyle Franks
6. Sworn Statement of Richie Higgins
7. Sworn Statement of Brandon Garrigos
8. Sworn Statement of Dalton Harrell

Technical Record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing with Mr. Tempel's affidavit
4. Order Setting Expedited Hearing
5. Employer's Exhibit List
6. Employer's Witness List
7. Employer's Motion in Limine and/or Motion to Compel Discovery

## CERTIFICATE OF SERVICE

I certify that a copy of this Order was sent as indicated on December 1, 2021.

| Name | Email | Service Sent To: |
|---|---|---|
| James E. Blount, IV, Employee's Attorney | X | jimmy@blountlawfirm.com |
| Allen Callison, Employer's Attorney | X | allen.callison@mgclaw.com tracy.palubicki@mgclaw.com |

_Penny Shrum_____

**Penny Shrum, Court Clerk**
**Wc.courtclerk@tn.gov**



Expedited Hearing Order Right to Appeal:

If you disagree with this Expedited Hearing Order, you may appeal to the Workers' Compensation Appeals Board.  To appeal an expedited hearing order, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within seven business days* of the date the expedited hearing order was filed.  When filing the Notice of Appeal, you must serve a copy upon all parties.

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of the appeal.**

3. You bear the responsibility of ensuring a complete record on appeal.  You may request from the court clerk the audio recording of the hearing for a $25.00 fee.  If a transcript of the proceedings is to be filed, a licensed court reporter must prepare the transcript and file it with the court clerk *within ten business days* of the filing the Notice of Appeal.  Alternatively, you may file a statement of the evidence prepared jointly by both parties *within ten business days* of the filing of the Notice of Appeal.  The statement of the evidence must convey a complete and accurate account of the hearing.  The Workers' Compensation Judge must approve the statement before the record is submitted to the Appeals Board.  If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. If you wish to file a position statement, you must file it with the court clerk within *ten business days* after the deadline to file a transcript or statement of the evidence.  The party opposing the appeal may file a response with the court clerk *within ten business days* after you file your position statement.  All position statements should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL

Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

Docket No.: _____

State File No.: _____

Date of Injury: _____

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____   ☐ Motion Order filed on _____

☐ Compensation Order filed on_____   ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____    2. Address: _____

3. Telephone Number: _____    4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning | _____ |
| SSI | $ _____ per month | beginning | _____ |
| Retirement | $ _____ per month | beginning | _____ |
| Disability | $ _____ per month | beginning | _____ |
| Unemployment | $ _____ per month | beginning | _____ |
| Worker's Comp. | $ _____ per month | beginning | _____ |
| Other | $ _____ per month | beginning | _____ |

9. My expenses are:

Rent/House Payment $ _____ per month     Medical/Dental $ _____ per month

Groceries    $ _____ per month     Telephone    $ _____ per month

Electricity    $ _____ per month     School Supplies $ _____ per month

Water    $ _____ per month     Clothing    $ _____ per month

Gas    $ _____ per month     Child Care    $ _____ per month

Transportation   $ _____ per month     Child Support    $ _____ per month

Car    $ _____ per month

Other    $ _____ per month (describe: _____ )

10. Assets:

Automobile    $ _____     (FMV) _____

Checking/Savings Acct. $ _____

House    $ _____     (FMV) _____

Other    $ _____     Describe: _____

11. My debts are:

| Amount Owed | To Whom |
|---|---|
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20 _____.

_____
NOTARY PUBLIC

My Commission Expires: _____